UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

EMS FINANCIAL SERVICES, LLC,

       Debtor.
----------------------------------------------------------------X
KENNETH KIRSCHENBAUM, as Trustee for
the Estate of EMS Financial Services, LLC,

       Plaintiff,

  -against-

FEDERAL INSURANCE COMPANY,
WHITE LINES COM, LLC, BRUCE POLLAK
and "JOHN DOE #1" through "JOHN DOE #10",
defendants being unknown to Plaintiff, the parties
intended being any party asserting a claim for
coverage under Debtor's errors and omissions
insurance policy (Policy Number 8223-2057)
issued by Federal Insurance Company,

       Defendants.
----------------------------------------------------------------X

Case No.: 12-71324-ast
Chapter 7

Adv. Pro. No.: 12-8221-ast

## DECISION AND ORDER ON FEDERAL INSURANCE COMPANY'S MOTION TO DISMISS

Defendant Federal Insurance Company ("Federal") filed a Rule 12(b)(1) motion seeking (1) dismissal of this adversary proceeding on the ground that the dispute among the parties is not ripe or justiciable, and (2) disallowance of the proofs of claims filed by Federal's codefendants, White Lines Com, LLC ("White Lines") and Bruce Pollak ("Pollak") (the "Motion"). [dkt item 15]  For the reasons set forth below, this Courts concludes that it has subject matter jurisdiction to hear this adversary proceeding, but the Court will abate this action pending resolution of the underlying actions commenced by White Lines and Pollak.  The Court further holds that

Federal's claims objections are procedurally deficient and are, therefore, denied without prejudice.

## JURISDICTION

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(a), (b), and (e), and 157(b)(2)(A), (B), (E), and (O), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

## BACKGROUND AND PROCEDURAL HISTORY

Prior to filing for Chapter 7 bankruptcy relief, EMS Financial Services, LLC, the debtor in the main bankruptcy case ("EMS"), operated as a third party escrow agent in various financial services transactions. EMS conducted business in New York State under its own name and through a wholly owned subsidiary, Escrow Management Services, LLC ("Escrow Management"). On March 6, 2012 (the "Petition Date"), EMS and Escrow Management each filed a Chapter 7 bankruptcy case.[1] Kenneth Kirschenbaum was appointed and duly qualified as the Chapter 7 Trustee of the bankruptcy estates of both EMS and Escrow Management.[2]

On May 30, 2012, the Trustee commenced this adversary proceeding against Federal, White Lines, Pollak, and John Doe defendants #1-10 (collectively the "Defendants") (the "Complaint") [dkt item 1]. The Complaint alleges that in January 2011, Federal issued a $5 million errors and omissions policy (the "Policy")[3], under which EMS, Escrow Management,

---

[1] Escrow Management filed case number 12-71323-ast.

[2] Escrow Management is not a party to this adversary proceeding.

[3] A copy of the Policy, number 8223-2057, is annexed to Federal's Motion as Exhibit "A". [dkt item 15-2]

2

and their officers, directors and employees were insured for any loss[4] resulting from a claim[5] made or reported from December 27, 2010 to December 27, 2011 for wrongful acts[6] committed by EMS, Escrow Management or their agents in their performance of third party administrative and disbursement services ("Escrow Services").  Complaint at ¶¶ 13-23.  The Policy contains a $5 million cap on any single claim and on all aggregate claims.  Complaint at ¶ 16.

Prior to filing bankruptcy, EMS and Escrow Management were sued by White Lines and Pollak in separate actions for alleged deficiencies in their performance of Escrow Services rendered on behalf of White Lines and Pollak, respectively (the "Underlying Actions").[7] Thereafter, White Lines and Pollak filed claims with Federal seeking to recover from the Policy; Federal is defending EMS and Escrow Management in the Underlying Actions.  Complaint at ¶¶ 50-53; Motion at p. 2.  White Lines and Pollak have also timely filed claims in EMS's bankruptcy case; White Lines filed a proof of claim for $7,840,643.00 ("Claim Number 1"), and

---

[4] A "Loss" is defined in the Policy as "the total amount which any Insured becomes legally obligated to pay as a result of any Claim made against such Insured, including "(1) damages, including punitive or exemplary damages . . .; (2) judgments and settlements; (3) pre-judgment and post-judgment interest; and(4) Defense Costs." Policy at § II(L).

[5] A "Claim" is defined as:

   (1) any of the following:
      (a) a written demand for monetary damages or non-monetary relief;
      (b) a civil proceeding commenced by the service of a complaint or a similar pleading; or
      (c) an arbitration proceeding,
against an Insured for a Wrongful Act, including any appeal therefrom; or

   (2) a written request to toll or waive a statute of limitations relating to a potential Claim described in paragraph (1) above.

Policy at § II(B)(1-2).

[6] "Wrongful Acts" are defined as "any actual or alleged negligent act, error or omission committed, attempted, or allegedly committed or attempted, solely in the performance of or failure to perform Insured Services, by an Insured Organization or by an Insured Person acting in his or her capacity as such and on behalf of an Insured Organization." Policy at § II(T).

[7] According to the Complaint, White Lines and Pollack each commenced lawsuits prior to the Petition Date: White Lines sued EMS and Escrow Management in New York Supreme Court, County of New York in November 2011, seeking $5.7 million for alleged negligence in the performance of Escrow Services, and for disbursing White Lines' funds without authorization (the "White Lines Action"); Pollak sued EMS and Escrow Management in the U.S. District Court for the Middle District of Pennsylvania in October 2011 for $1.325 million, alleging improper disbursement of investor funds (the "Pollak Action"). Complaint at ¶¶ 24-49, 55.

3

Pollak filed a proof of claim for $1,325,000.00 ("Claim Number 7").[8] White Lines also filed a proof of claim in Escrow Management's bankruptcy case for the same amount as Claim Number 1; Pollak did not file a claim in Escrow Management's case. The Trustee asserts in the Complaint that, because White Lines' and Pollak's claims exceed the Policy's $5 million liability cap, "[a]ny payment by Federal to White Lines or Pollak based upon their claims for coverage under the Policy . . . made prior to the claims of all Policy Claimants being finally fixed in the bankruptcy proceedings . . . would result in a deviation from a pro rata distribution of Policy proceeds" and "would cause an inequitable result as between Policy Claimants and potentially between all general unsecured creditors of the Estate." Complaint at ¶¶ 54, 63.

Accordingly, the Complaint seeks a judgment (a) determining that the Policy covers White Lines' and Pollak's claims against EMS; (b) determining that White Lines' and Pollak's claims against the estate exceed the limits of liability under the Policy; (c) directing Federal to turn over to the Trustee the $5 million maximum limit of liability under the Policy for distribution to creditors; and (d) for the Trustee's attorney's fees and costs. Complaint, "Requested Relief" (unnumbered paragraphs). Curiously, the Complaint does not expressly seek a determination that either the Policy or its proceeds are property of the bankruptcy estate. The Court also notes that although the Trustee is also the trustee of Escrow Management's estate, and although Escrow Management is also an insured under the Policy, the Trustee did not join Escrow Management as a party nor does the Trustee seek any relief on behalf of Escrow Management through this adversary proceeding.

---

[8] In addition, White Lines and Pollak each sought, and obtained, relief from the automatic stay in the EMS bankruptcy case pursuant to 11 U.S.C. § 362(d) so that White Lines and Pollak could seek adjudication of their respective default judgment motions against EMS in the Underlying Actions. [Case No. 12-71324-ast, dkt items 41, 44]. According to Federal, White Lines' motion for default judgment remains on submission with the New York Supreme Court, and Pollak's motion for default judgment has been denied and the stay has been reinstated by the Pennsylvania federal court pending further order of this Court. Motion at pp. 6, 9.

**Federal's Motion to Dismiss**

On August 6, 2012, Federal filed the instant Motion seeking dismissal of the Complaint pursuant to Federal Rule of Civil Procedure ("FRCP" or "Rule") 12(b)(1), as incorporated by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012, based upon a lack of a ripeness or a justiciable controversy.[9] According to the Motion, "the issue of Federal's indemnity obligations under the Policy for the Underlying Lawsuits [the Underlying Actions] is not ripe for judicial determination at this juncture, given that EMS's liability in the Underlying Suits, and the coverage available under the Policy for any such liability, if any, remain to be determined." Motion at p. 9. Federal argues that, under New York law, its liability to the Trustee is not ripe for determination, because "[u]nless and until there has been a determination as to the liability of EMS for the claims asserted in the Underlying Lawsuits, and the basis for any such liability, the issue of Federal's obligation, if any, to indemnify EMS under the terms of the Policy is simply not ripe for judicial determination." Motion at p. 12.[10]

In addition to seeking dismissal, Federal seeks to have White Lines' and Pollak's claims disallowed, arguing that this Court is "mandate[d] to disallow contingent claims" under § 502(e)(1)(B) and cannot estimate those claims. Motion at p. 13. Federal further asserts that the mere filing by White Lines and Pollak of claims in EMS's bankruptcy case did not create a live case or controversy. Motion at p. 13.

---

[9] Separately, Federal filed a motion to withdraw the reference in this adversary proceeding [dkt item 16], which is pending before the U.S. District Court for the Eastern District of New York. The filing of that motion does not impact this Court's authority to render a decision on Federal's Motion. *See* FED. R. BANKR. P. 5011(c) ("the filing of the motion for withdrawal . . . shall not stay the administration of the case or any proceeding therein before the bankruptcy judge . . . ."); *Pryor v. Santangelo*, 2012 WL 464034, at *3 (Bankr. E.D.N.Y. Feb. 13, 2012).

[10] In its Motion, Federal also mentions various reservations of rights, including its contention that certain allegedly improper transfers asserted by White Lines and Pollak may have occurred outside the effective period of the Policy and might not be covered by the Policy. However, as Federal does not seek dismissal based on any of these assertions, this Court need not, and does not, consider them in rendering this decision.

On September 27, 2012, the Trustee filed an objection (the "Objection") [dkt item 24], in which he asserts that this adversary proceeding is justiciable and ripe for determination because White Lines and Pollak have filed proofs of claims in EMS's bankruptcy case that are *prima facie* valid, and there is a ripe question as to whether Federal is obligated to indemnify the bankruptcy estate for those claims. Objection at p. 3. As an alternative, the Trustee asks that rather than dismiss this adversary proceeding, this Court should hold the adversary proceeding in abeyance pending resolution of the Underlying Actions. Objection at pp. 6-7.

With respect to Federal's claims objections, the Trustee argues that Federal has failed to comply with the procedural requirements of Bankruptcy Rule 3007 and E.D.N.Y. Local Bankruptcy Rule 3007-1. Objection at p. 2. Turning to the substance of Federal's claims objections, the Trustee asserts that Federal misapplies § 502(e)(1)(B) because the contingent nature of a claim is not a basis for disallowing the claim, and § 502(e)(1)(B) only provides for disallowance where the claimant seeks reimbursement or contribution for a claim where the claimant is liable on the debt with the debtor, and neither White Lines nor Pollak are liable with EMS on the debts represented by their filed proofs of claims. Objection at pp. 4-5. The Trustee adds that "[i]f Federal believes that the Claims have no merit, then Federal should determine whether it has standing to object to the Claims, and if it has such standing, it should commence appropriate motion or proceed, on proper notice, for the Court to determine the validity of the Claims." Objection at p. 4. Neither White Lines nor Pollack filed a response to the Motion.[11]

---

[11] On July 23, 2012, Pollak filed an Answer to the Complaint. [dkt item 8] On November 30, 2012, White Lines filed a Motion to extend its time to file an answer. [dkt item 25]

**DISCUSSION**

**A. This Court Has Jurisdiction to Determine This Adversary Proceeding**

*1. Legal Standard for FRCP 12(b)(1) Motions*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the [federal] court lacks the statutory or constitutional power to adjudicate it." *Lewis v. Carrano*, 844 F. Supp. 2d 325, 328 (E.D.N.Y. 2012) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *see 1-800-Flowers.com, Inc. v. Edible Arrangements, LLC*, 2012 WL 5945065, at *2 (E.D.N.Y. Nov. 28, 2012). When considering a motion under FRCP 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [the Court is] not to draw inferences from the complaint favorable to plaintiffs." *Lewis*, 844 F. Supp. 2d at 328-29 (quoting *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004)); *1-800-Flowers.com*, 2012 WL 5945065, at *2. The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [the Court] may not rely on conclusory or hearsay statements contained in the affidavits." *Lewis*, 844 F. Supp. 2d at 329. "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Id.* (quoting *Aurecchione v. Schoolman Transp. Sys. Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).

Determination of a bankruptcy court's subject matter jurisdiction generally begins with the bankruptcy jurisdiction statute, 28 U.S.C. § 1334. *See In re Margulies*, 476 B.R. 393, 398 (Bankr. S.D.N.Y. 2012). In its Motion, Federal does not assert that this Court lacks jurisdiction under § 1334 or constitutional authority under *Stern v. Marshall*[12] to hear and determine this dispute; rather, Federal argues that the Court lacks subject matter jurisdiction to hear this

---

[12] 564 U.S. --; 131 S. Ct. 2594 (2011).

7

adversary proceeding under the doctrine of ripeness. Motion at p. 9. The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57 n.18 (1993).

The Second Circuit Court of Appeals has stated:

> [r]ipeness is a term that has been used to describe two overlapping threshold criteria for the exercise of a federal court's jurisdiction. Both are concerned with whether a case has been brought prematurely, but they protect against prematureness in different ways and for different reasons. The first of these ripeness requirements has as its source the Case or Controversy Clause of Article III of the Constitution, and hence goes, in a fundamental way, to the existence of jurisdiction. The second is a more flexible doctrine of judicial prudence, and constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it.

*Simmonds v. I.N.S.*, 326 F.3d 351, 356-57 (2d Cir. 2003) (internal citations omitted).

A bankruptcy court, as a unit of the district court, may only exercise jurisdiction over a live case or controversy. *See Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir. 2001). Federal argues that this Court cannot hear this dispute because no live case or controversy exists until its liability under the Policy, if any, has been finally determined in the Underlying Actions. Motion at p. 9, citing, *inter alia*, *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); *Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir. 2001). Thus, the issue, as framed by Federal, is whether there is a live case or controversy among the parties.

However, this Court cannot answer that question until the Court has considered two threshold questions that the parties did not directly address in their moving papers but, rather, appear to assume as a given: (1) whether the Policy is property of the bankruptcy estate, and (2) whether the proceeds of the Policy are property of the estate. If neither the Policy nor the proceeds are property of EMS's estate, there can be no justiciable controversy for this Court to adjudicate. U.S. CONST. art. III, § 2, cl. 1; *In re Nunez,* 2000 WL 655983, at *6 (E.D.N.Y. Mar.

17, 2000) ("bankruptcy courts cannot issue advisory opinions."); *see Stern v. Marshall*, 564 U.S. --; 131 S. Ct. 2594, 2603 (2011) (bankruptcy courts derive their jurisdiction from Article III courts); *see also U.S. Nat'l Bank v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 446 (1993); *Flast v. Cohen*, 392 U.S. 83, 97 (1968). Given the importance of these questions as a precondition to this Court having constitutional authority to hear and determine this dispute, this Court will not assume the answers, but will instead address each in turn.

### *2. The Policy Is Property of EMS's Bankruptcy Estate*

Section 541(a) of the Bankruptcy Code broadly defines property of the estate as comprising "property, wherever located and by whomever held" including:

> (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case [and] . . .
>
> (6) Proceeds, product, offspring, rents, or profits of or from property of the estate . . . .

11 U.S.C. § 541(a)(1), (6) (2011). With respect to insurance policies, courts have generally concluded that the policies themselves are property of the estate pursuant to § 541(a)(1) "[b]ecause corporations pay for and own insurance policies." *In re First Cent. Fin. Corp.*, 238 B.R. 9, 15-16 (Bankr. E.D.N.Y. 1999); *see In re Minoco Group of Cos.*, 799 F.2d 517, 519 (9th Cir. 1986) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986)); *In re Johns-Manville Corp.*, 40 B.R. 219, 230 (S.D.N.Y. 1984). It is equally well settled that "the debtor['s] rights under its insurance policies are property of a debtor's estate under § 541(a) of the Code." *Margulies*, 476 B.R. at 399 (Bankr. S.D.N.Y. 2012) (quoting *In re St. Clare's Hosp. & Health Ctr.*, 934 F.2d 15, 18-19 (2d Cir. 1991)).

In his Complaint and in his Objection, the Trustee does not directly address the question of whether the Policy is property of the estate. Instead, the Trustee appears to operate from the

9

assumption that the Policy and its proceeds are estate property by seeking turnover of the Policy proceeds under § 542. The Court notes that an action for turnover under § 542 is only appropriate for property of the estate. *See In re Teligent, Inc.*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005).

Federal does not challenge the Trustee's assumptions.

The Court finds that EMS was a party to the insurance contract between Federal, EMS, and Escrow Management, and that EMS is one of the named "Insured" beneficiaries under the Policy. Upon the commencement of EMS's bankruptcy case, any interest EMS had in the Policy became property of the estate pursuant to § 541(a)(1). *See First Central*, 238 B.R. at 16; *see also Matter of Vitek, Inc.,* 51 F.3d 530. 533 (5th Cir. 1995); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986); *Johns-Manville Corp.*, 40 B.R. at 230. Accordingly, this Court finds that the EMS bankruptcy estate has a property interest in the Policy, and any rights incident to the Policy are estate property under § 541.

### *3. The EMS Estate Has a § 541(a) Property Interest in the Proceeds of the Policy*

The next question is whether the EMS estate has a property interest in any or all of the $5 million in proceeds available under the Policy. "Whether proceeds of an insurance policy are 'property of the estate' depends upon the nature of policy. The central question . . . is whether, in the absence of a bankruptcy proceeding, proceeds would belong to the debtor when the insurer pays on a claim." *In re Hereford Biofuels, L.P.*, 466 B.R. 841, 856 (Bankr. N.D. Tex. 2012).

"When an insurance policy provides coverage only to the debtor, courts will generally rule that the proceeds are property of the estate." *In re World Health Alternatives, Inc.*, 369 B.R. 805, 810 (Bankr. D. Del. 2007); *see also Tringali v. Hathaway Mach*., Co., 796 F.2d 553, 560 (1st Cir. 1986) ("language, authority, and reason all indicate that proceeds of a liability insurance

10

policy are property of the estate"). By contrast, when the policy covers only third parties, such as the debtor's officers and directors, "courts will generally rule that the proceeds are not property of the estate." *World Health*, 369 B.R. at 810. When the policy covers both the debtor and a third party, courts are split, with some courts, including Judge Feller of this Court, holding that a debtor's right to indemnification under a policy for its out-of-pocket costs does not automatically bring the proceeds into the estate, particularly when "there have been no claims filed against the Debtor which would implicate the narrow scope of the Policy's entity coverage." *First Cent.*, 238 B.R. at 17; *see In re Allied Digital Tech. Corp.*, 306 B.R. 505, 512 (Bankr. D. Del 2004); *In re Adelphia Communs. Corp.*, 302 B.R. 439, 448 (Bankr. S.D.N.Y. 2003). In this vein, some courts have held that the proceeds of specific categories of policies – such as casualty, collision, life, or fire insurance – are property of the estate, especially when the debtor is a beneficiary of the policy and when the debtor (and not a third party) is the payee. *See Matter of Edgeworth*, 993 F.2d 51, 56 (5th Cir. 1993). Other courts have held that the debtor's right to indemnification under an insurance policy is sufficient to bring the policy's proceeds into the estate. *See In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413, 420 (Bankr. E.D. Pa. 1995); *see also In re Jasmine, Ltd.*, 258 B.R. 119, 128 (D.N.J. 2000).

In this case, the Policy defines the "Insureds" as EMS, Escrow Management, any subsidiary of either of these entities, and "any past, present or future natural person director, officer, partner, or Employee" of EMS or Escrow Management. Policy at § II(*I*). Under the Policy, EMS is not merely indemnified for out-of-pocket losses that it incurs on behalf of third parties; rather, EMS is a "beneficiary of the liability insurance coverage." *First Cent.*, 238 B.R. at 16. As a beneficiary, EMS is covered by the Policy for any Loss for which EMS becomes "legally obligated to pay as a result of any Claim made against any such Insured, including

11

(1) damages, including punitive or exemplary damages . . .; (2) judgments and settlements; (3) pre-judgment and post-judgment interest; and (4) Defense Costs." Policy at § II(L).

Moreover, unlike in *First Central*, claims have been filed by White Lines and Pollak against the Policy and in EMS's bankruptcy case seeking payment from the Policy. While this Court cannot presently determine whether White Lines and Pollak hold claims for Losses that are entitled to payment from the Policy proceeds, the Court does find that White Lines and Pollak have filed lawsuits and proofs of claims seeking payment from EMS and, potentially, from the proceeds of the Policy, thus implicating EMS's coverage under the Policy. *See* Complaint at ¶¶ 50-51.

Accordingly, because EMS is a covered Insured under the Policy, and because White Lines and Pollak have filed lawsuits and proofs of claims that implicate EMS's coverage under the Policy, this Court holds that the EMS estate has a property interest in the Policy proceeds.

The issue then becomes whether the proceeds of the Policy are exclusively property of EMS's estate given the existence of non-debtor third party beneficiaries. As discussed below, the amount of proceeds, if any, which will ultimately come into the EMS estate cannot be determined until the Underlying Actions have been resolved and until all parties with an interest in the Policy and its proceeds are before this Court.

### *4. This Court Has Subject Matter Jurisdiction Over This Adversary Proceeding But Will Abate This Action Pending the Outcome of the Underlying Actions*

Having determined that the EMS estate has a property interest in both the Policy and its proceeds, rendering each property of the estate to the extent of EMS' interests, it is clear that this Court has subject matter jurisdiction over both assets. *See* 28 U.S.C. §§ 1334(a), (b), and (e), and 157(b)(2)(A), (B), (E), and (O).

Nevertheless, Federal argues that this adversary proceeding is "premature" in its entirety because "[u]nless and until there has been a determination as to the liability of EMS for the claims asserted in the Underlying Lawsuits, and the basis for any such liability, the issue of Federal's obligation, if any, to indemnify EMS under the terms of the Policy is simply not ripe for judicial determination." Motion at p. 12. In support of this assertion, Federal argues that under New York law[13]:

> An action to declare the insurer's duty to indemnify is premature and does not lie where the complaint in the underlying action alleges several grounds of liability, some of which invoke the coverage of the policy, and where the issues of indemnification and coverage hinge on facts which will necessarily be decided in that underlying action.

Motion at p. 11 (quoting *Specialty Nat'l Ins. Co. v. English Bros. Funeral Home,* 606 F. Supp. 2d 466, 472 (S.D.N.Y. 2009); *see Am. Auto. Ins. Co. v. Sec. Income Planners & Co, LLC*, 847 F. Supp. 2d 454, 465 (E.D.N.Y. 2012); *Hout v. Coffman,* 126 A.D.2d 973, 511 N.Y.S.2d 990 (N.Y. App. Div. 1987). Federal asserts that since its liability to actually pay on the Policy hinges on whether White Lines and/or Pollak ultimately prevail in the Underlying Actions, this Court cannot make any determination with respect to the Policy and, therefore, this adversary proceeding is not ripe for determination.

While Federal is correct that, under New York law, a declaration of its duty to indemnify would be premature at this juncture, Federal ignores the fact that the Trustee's Complaint does not simply seek a declaration of Federal's duty to indemnify; rather, the Complaint seeks a variety of forms of relief that are ripe for determination by this Court.

---

[13] The Policy does not appear to contain a choice of law provision; however, prior to filing bankruptcy, EMS conducted business in New York State, and it appears that the Policy was entered into in New York State. Further, the Trustee has not challenged Federal's assertion that New York law controls this dispute. Accordingly, the Court will apply New York law in its analysis.

First, as discussed above, resolution of the dispute among the parties necessarily requires a determination of whether the Policy and its proceeds are property of EMS's estate, an issue that is both ripe and properly before this Court. *See* 28 U.S.C. §§ 1334(a), (b), and (e), and 157(b)(2)(A), (B), (E), and (O). As noted, this Court has determined that the EMS estate has a § 541 property interest in both the Policy and its proceeds.

Second, Federal's Motion ignores the fact that the Trustee's Complaint seeks a determination of whether the filed claims of White Lines and Pollak exceed the Policy's $5 million limitation on liability. Complaint, "Requested Relief," at ¶ (b). In considering the Trustee's request, this Court may take notice of the claims filed by White Lines and Pollak in the claims registry in EMS's bankruptcy case. *See In re Poseidon Pool & Spa Recreational, Inc.*, 391 B.R. 234, 242 (Bankr. E.D.N.Y. 2008); *In re AlphaStar Ins. Group Ltd.*, 383 B.R. 231, 281 (Bankr. S.D.N.Y. 2008). The Court takes notice that White Lines filed Claim Number 1 in the amount of $7,840,643.00 and that Pollak filed Claim Number 7 in the amount of $1,325,000.00. Simple arithmetic reveals that White Lines' Claim Number 1 alone exceeds the $5 million liability cap in the Policy; and although Pollak's Claim Number 7 does not by itself exceed the Policy's liability cap, the Pollak claim, when added to the White Lines claim, clearly exceeds the Policy's liability cap. Accordingly, this Court finds as a matter of law that White Lines' and Pollak's claims asserted against EMS's bankruptcy estate, as filed with this Court, exceed the Policy's $5 million limit on liability.

Further, the Complaint seeks an award of attorney's fees and costs for pursuing this action. Complaint, "Requested Relief," at ¶ (d). At this stage in the litigation, the Court will not award the Trustee fees or costs, particularly given the fact that Federal appears to be complying with its duty under the Policy to defend EMS in the Underlying Actions. *See* Complaint at

14

¶¶ 50-53; Motion at p. 2.  However, Federal cites to no authority in its Motion for the proposition that this Court is jurisdictionally barred from considering the Trustee's request for attorney's fees and costs, especially since Federal's obligation to defend EMS in the Underlying Actions is an enforceable right of the bankruptcy estate.  *See Margulies*, 476 B.R. at 399.

Additionally, the Complaint seeks a determination that the Policy covers White Lines's and Pollak's claims against EMS.  Complaint, "Requested Relief," at ¶ (a).  As noted in the previous section, this Court finds that White Lines and Pollak have filed lawsuits and proofs of claims seeking payment from EMS's coverage under the Policy.  The ultimate issue of whether White Lines and Pollak are entitled to be paid on those claims, and if so, by whom, is premature at this juncture, because the Underlying Actions have not yet been resolved by their respective courts.  Further, it would be an inappropriate use of judicial resources for this Court to determine whether EMS undertook any actions or failed to undertake any actions that would render it liable to White Lines or Pollak, and, if so, in what amounts – those determinations will be made by the courts having jurisdiction over the Underlying Actions.

Finally, the Complaint seeks an order directing Federal to turn over the full face amount of the Policy to the Trustee to be administered.  Complaint, "Requested Relief," at ¶ (c). Because EMS has a § 541 property interest in the Policy and its proceeds, this Court is a proper forum for determining whether to compel turnover of the proceeds to the Trustee.  *See* 28 U.S.C. §§ 1334(b), (e)(1) and 157(b)(A) and (E).  However, the Trustee's claim for turnover is premature at this stage because, as Federal points out, White Lines and Pollak have not established their right to payment from EMS, and EMS has not established its right to payment from the Policy.

Accordingly, the most efficient approach to resolving the disputes among all parties is for this Court to abate this adversary proceeding pending adjudication or resolution of the White Lines and Pollak Underlying Actions.[14]  Once these Actions have been resolved, and once this Court has all necessary parties before it, this Court can determine the amount, if any, of White Lines' and Pollak's claims against the estate and their impact on the proceeds of the Policy.  The Court will also be able to then determine whether to grant the Trustee any other relief he seeks in the Complaint not otherwise granted herein.

### B.  Federal's Objection to White Lines' and Pollak's Claims

In addition to seeking dismissal under FRCP 12(b)(1), Federal's Motion appears to seek to disallow both White Lines' and Pollak's filed proofs of claim.  In support of this relief, Federal points to § 502(e)(1)(B), which provides in relevant part that

> a claim for reimbursement or contribution of an entity that is liable with the debtor . . . to the extent that such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim . . . .

11 U.S.C. § 502(e)(1)(B) (2011).  According to Federal, this Court is "mandate[d] to disallow contingent claims" under § 502(e)(1)(B).  Motion at p. 13.

In his Objection, the Trustee disputes Federal's reading of § 502(e)(1)(B), arguing that the statute only provides for disallowance where the claimant seeks reimbursement or contribution for a claim where the claimant is liable on the debt with the debtor.  Objection at p. 4.  As the Trustee points out, neither White Lines nor Pollak are liable with EMS on the debts represented by their filed proofs of claims.  Objection at pp. 4-5.  The Trustee further argues that

---

[14] By "resolution", this Court means either: (1) entry of judgments that are appealable and enforceable through execution or other means of collection, regardless of whether any appeal has been taken or the time to appeal has run; or (2) settlements that have been executed by the appropriate parties and approved to the extent necessary. Although this Court has not allowed White Lines or Pollak to seek to collect on any judgment against EMS, any judgment adverse to EMS will otherwise be considered a resolution.

Federal's putative claims objections are not properly before the Court because Federal has "failed to effectuate due process" by not following Bankruptcy Rule 3007 in objecting to White Lines' and Pollak's claims. Objection at p. 2.

This Court does not need to reach the substance of Federal's purported claims objections[15], because Federal has failed to satisfy the bare minimal procedural requirements under Bankruptcy Rule 3007 or E.D.N.Y. Local Bankruptcy Rule 3007-1.  In particular, Federal's purported claims objections were not filed as a separate motion, were not filed in EMS's main bankruptcy case, were not served on the claimants on at least thirty days' notice, do not identify the claims by number or include a copy of either proof of claim as an attachment, and are an improper joinder of claims objections under Bankruptcy Rule 3007(c)-(e).  *See* FED. R. BANKR. P. 3007; E.D.N.Y. LBR 3007-1; 9013-1; 9014-1.  As a result, Federal's purported claims objections are procedurally deficient, and the Court will not consider them.

## CONCLUSION

Accordingly, it is hereby

**ORDERED**, that this Court finds that it has subject matter jurisdiction to hear this adversary proceeding; and it is further

**ORDERED**, that for the reasons set forth above, this Court concludes that the EMS bankruptcy estate has a § 541 property interest in the Policy and in its proceeds; and it is further

---

[15] While not deciding the issue, this Court notes that § 502(e)(1)(B) was enacted to "prevent[] competition between a creditor and his guarantor for the limited proceeds in the estate.' Although the statute is not limited to claims by guarantors and sureties, its focus is on claims by those who may become liable to a third party because the debtor fails to satisfy a primary liability to that third party." *In re MEI Diversified*, Inc., 106 F.3d 829, 831 (8th Cir. 1997) (quoting H.R. REP. No. 95-595, at 355 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6310; 1977 WL 9628, at *319)); *see In re G.I. Joe's Holding Corp.*, 420 B.R. 208, 214 (Bankr. D. Del. 2009). Further, "a direct claim for insurance premiums" is not disallowed by § 502(e)(1)(B). *MEI Diversified*, 106 F.3d at 831, citing *In re N.Y. Trap Rock Corp.*, 153 B.R. 648, 651 (Bankr. S.D.N.Y. 1993). The claims filed by White Lines and Pollak are not claims by those who may become liable to a third party if EMS fails to pay; on the contrary, it is Federal who may become liable to pay EMS and/or White Lines and Pollak if those latter parties succeed in the Underlying Actions.

**ORDERED**, that this Court finds that the claims filed by White Lines and Pollak in EMS's bankruptcy case exceed the $5 million liability cap in the Policy; and it is further

**ORDERED**, that this Court further finds that, because it does not have all the necessary facts and evidence presently before it to determine whether the Trustee is entitled to all other relief sought in the Complaint, this Court will abate this adversary proceeding pending entry of judgments in both the White Lines and Pollak Underlying Actions by their respective courts, and/or agreed resolutions of the Underlying Actions; and it is further

**ORDERED**, that based upon the foregoing, this Court will suspend the discovery and other pretrial deadlines in this adversary proceeding pending resolution of the underlying White Lines and Pollak Underlying Actions; and it is further

**ORDERED**, that any party in interest, including White Lines, Pollak or Federal, may file a proper motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) to prosecute the Underlying Actions against EMS and/or Escrow Management to judgment, but that enforcement of any such judgment(s) must be brought to this Court; and it is further

**ORDERED**, that the parties to this adversary proceeding shall file a letter with this Court on or before **June 30, 2013**, advising the Court of the status of the White Lines Action and the Pollak Action, after receipt of which the Court will determine what further action should be taken; and it is further

**ORDERED**, that Federal's objection to White Lines' Claim Number 1 and Pollak's Claim Number 7 is denied without prejudice.



**Dated: January 4, 2013**
**Central Islip, New York**

      **Alan S. Trust**
**United States Bankruptcy Judge**